UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Shirley Mae Segar, | ) | Civil Action  No. 5:13-1038-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). The issues before the court are whether the decision is supported by substantial evidence, and whether the Commissioner's decision contains an error of law. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.   Relevant Background

A.  Procedural History

On March 16, 2011,[1] Plaintiff filed applications for DIB and SSI alleging a disability onset date of February 4, 2010. Tr. 122-35. After being denied both initially and on

---

[1] Although the Application Summary indicates Plaintiff's application was completed on April 8, 2011, Tr. 122, as noted on the Disability Determination  and Transmittal Forms Plaintiff's protective filing date was March 16, 2011, Tr. 48.

reconsideration, Tr. 48-54, on November 22, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 68-69. On April 29, 2012, the ALJ conducted a hearing, taking testimony from Plaintiff, her daughter, and a vocational expert ("VE"). Tr. 23-47. The ALJ issued a decision on May 8, 2012, denying Plaintiff's claims. Tr. 9-18. The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. Tr. 1-4. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on April 18, 2013.  ECF No. 1.

B.  Plaintiff's Background and Medical History

1.  Background

Plaintiff, born on March 26, 1949, was 60 years old as of her alleged onset date of February 4, 2010. Tr. 122. She completed the eleventh grade and did not attend special education classes. Tr. 159. Plaintiff did not complete any specialized job training or vocational school. *Id.* Plaintiff's prior work history includes cleaner at a motel and at a power plant. Tr. 159. Plaintiff alleged that her ability to work is limited by problems with her wrist, back, joint pain, acid reflux and nerves. Tr. 158.

2.  Medical History

On October 5, 2010, Plaintiff, seeking blood pressure medication and acid reflux medication, was seen by Dr. Stuart C. Owens. Tr. 252. Plaintiff returned to Dr. Owens on April 21, 2011, seeking arthritis and GERD medications. Tr. 251. Dr. Owens's examination noted multiple tender joints consistent with arthritis and he prescribed Atenolol/chlorthalidone 50/25 daily, Nexium daily, Clinoril 200 mg twice daily, and Lortab 5 at night to help her sleep. *Id.*

On June 28, 2011, Plaintiff underwent a disability examination by Dr. Marcus Schaefer. Tr. 234-37. Plaintiff was evaluated for "allegations/diagnoses of wrist, back, and joint pains; acid

reflux and nerves; joint and back problems." Tr. 234.  Dr. Schaefer's musculoskeletal exam of Plaintiff noted that her "range of the cervical spine is decreased 75 percent with complaints of left greater than right neck pain." Tr. 236. Dr. Schaefer noted Plaintiff had full range of motion in her right and left shoulders and normal range of motion of her elbows, wrists, and fingers. *Id.* Her hand grasp strength was 60 pounds, 55 pounds, and 60 pounds on the right and 50 pounds, 45 pounds, and 45 pounds on the left. *Id.* Plaintiff demonstrated "somewhat unsteadiness with the tandem gait occasionally using walls for support." *Id.* Plaintiff was able to walk on her heels and toes and perform a full squat. *Id.* After reviewing Plaintiff's medical records and performing a physical examination of Plaintiff, Dr. Schaefer's summary contains the following conclusions:

> She is able to do light house work and walk for approximately one quarter mile. She has had problems holding a job in the last three to four years because she misses work for abdominal pain and bothering aches and pains. At 62 she is in a very difficult job market for the type of job that she can do which are probably housekeeping and related activities of medium department of labor category work and she should be in the light category of work.

Tr. 236-37.

On August 31, 2011, x-rays were made of Plaintiff's right shoulder and lumbar spine. Tr. 239-240. The impression of the right shoulder was unremarkable, and the impression of the lumbar spine indicated "[s]table appearance of mild levoconvex scoliosis of the lumber spine and mild degenerative changes within the lower lumbar spine." Tr. 240.

On September 8, 2011, Jean Smolka, M.D., a non-examining state agency physician, reviewed the record and assessed Plaintiff's physical residual functional capacity ("RFC"). Tr. 241-48. Dr. Smolka found that Plaintiff was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently, walking/standing/sitting at least six hours in an eight-hour workday (with normal breaks), and unlimited restrictions for pushing and/or pulling. Tr. 242. She found that Plaintiff could frequently climb ramps/stairs and occasionally climb ladders,

3

ropes, or scaffolds. Tr. 243. She opined Plaintiff could frequently balance, stoop, kneel, crouch, and crawl. *Id.* Dr. Smolka found Plaintiff was limited in her ability to reach in all directions including overhead, but no other manipulative limitations. Tr. 244. She also found no visual, communicative, or environmental limitations. Tr. 244-45. Based on her review of Dr. Schaefer's exam and the x-rays, Dr. Smolka found that the "objective and cumulative medical evidence fails to support the degree of restrictions indicated by [Dr. Schaefer's] statement which appears to be based largely on [Plaintiff's] age. Additionally single contact[.] No treating relationship. Given little [weight]." Tr. 247.

A second RFC assessment was completed by Dr. Tom Brown on October 10, 2011. Tr. 253-260. Dr. Brown found that Plaintiff was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently, walking/standing/sitting at least six hours in an eight-hour workday (with normal breaks), and unlimited restrictions for pushing and/or pulling. Tr. 254. He found that Plaintiff could occasionally climb ramps/stairs and never climb ladders, ropes, or scaffolds. Tr. 255. He opined Plaintiff could frequently balance and occasionally stoop, kneel, crouch, and crawl. *Id.* Dr. Brown found Plaintiff had no manipulative, visual, communicative, or environmental limitations. Tr. 256-57. With regard to the severity of Plaintiff's symptoms, Dr. Brown noted that Plaintiff's allegations of weight loss were not credible, but her allegation of "joint pains is credible, she has osteoarthritis but x-rays do not indicate severe degenerative changes." Tr. 258.

On October 10, 2011, Lisa Clausen, Ph.D. completed a Psychiatric Review Technique form for Plaintiff. Tr. 261-75. She noted a non-severe impairment of depression in the category of affective disorders. Tr. 261, 264. In the "B" criteria of the Listings, Dr. Clausen noted mild functional limitations in the areas of Restriction of Activities of Daily Living; Difficulties in

Maintaining Social Functioning; Difficulties in Maintaining Concentration, Persistence, or Pace; and no Episodes of Decompensation. Tr. 271. She noted the evidence did not establish the presence of the "C' criteria. Tr. 272. Dr. Clausen concluded:

> The allegation of "nerves" is consistent with the MER indicating a [history] of depression. However, there is no description of any severe [symptoms] of depression or anxiety and the [symptoms] have not been troubling enough to the [Plaintiff] to follow through with any [mental health treatment]. Overall, the [symptoms] of a mental condition are mild and would not impose a substantial limitation on work-related functions.

Tr. 273.

Plaintiff underwent a cervical MRI on November 12, 2012 for her complaints of pain in her right shoulder and neck.[2] Tr. 279. The findings indicated mild disc bulges with no stenosis and the impression was "[s]cattered mild spondylosis. No severe stenosis or neural impingement." *Id.*

### C. The Administrative Hearing

#### 1. Plaintiff's Testimony

Plaintiff, her counsel, and a witness appeared in person and a VE appeared via telephone at her administrative hearing on April 19, 2012. *See* Tr. 23-47. Plaintiff testified that she had self-employment earnings from the previous year based on work she did supervising her daughter as she cleaned houses. Tr. 27-29. Plaintiff stated that she last worked for PPM at Santee Cooper doing janitorial work. Tr. 31-32. Plaintiff stated she was fired because she was sick and missed too many days. Tr. 32. Plaintiff testified that she also worked previously at Econo-Lodge for ten years doing cleaning and janitorial work. *Id.* She stated she had not done any other type of work. Tr. 33.

---

[2] This MRI was conducted after the ALJ's decision but was submitted to the Appeals Council for consideration. Tr. 4.

Plaintiff testified that her 19-year-old granddaughter recently moved out of her home and Plaintiff now lives alone. Tr. 33. However, Plaintiff's daughter and her daughter's two sons live next door and they come over and assist her. *Id.* Plaintiff stated that during the day, after she gets herself bathed and dressed, she may "wash a little dishes" or attempt to cook. Tr. 34. Plaintiff stated she is seen by doctors at the Sumter Free Clinic. *Id.* Plaintiff was recently given a prescription to have an MRI done on her shoulder because of pain she was having in her shoulder and back. Tr. 35. Plaintiff testified that the problems that bother her the most are her right arm, right shoulder, and entire right side. Tr. 36. She stated those were the issues she was having while working at Santee Cooper but they were getting worse. Tr. 37. Plaintiff testified that she tried to vacuum her floor and her "back was hurting so bad [she] couldn't even sit straight." *Id.* Plaintiff testified that when she was fired from Santee Cooper she was "penalized" for eight weeks. *Id.* She stated she was taking a lot of time off because she had acid reflux, a hernia, and back trouble. *Id.* Plaintiff testified that x-rays of her right wrist revealed "gaps" in her wrist and that she is unable to hold anything heavy in her right hand. Tr. 38. Plaintiff stated that she never had a driver's license because she was "always too nervous to drive." Tr. 39. Plaintiff stated she did not think anyone would hire her because of her age. *Id.* Plaintiff also stated that her "nerves" were bad and she was crying more. Tr. 40.

    2.  Witness's Testimony

Plaintiff's daughter, Tomika Mouzon ("Ms. Mouzon"), also testified. Tr. 41. Ms. Mouzon testified that she visits her mother several times a month and assists her with cleaning her home, cooking, and getting her mail. Tr. 42. Ms. Mouzon stated that her mother's "bones bothers her a lot and her eyesight is going bad." Tr. 43. She testified that her mother's wrist and arms "pop" and her mother has a lot of back pain. *Id.* Ms. Mouzon stated that in 2011 when her mother kept

her children during the summer, they did housecleaning work with Plaintiff. Tr. 43-44. Ms. Mouzon stated that her sister who lived next to Plaintiff helped with the cleaning of other homes, but Ms. Mouzon cleaned her mother's home. Tr. 44. Ms. Mouzon testified that she did not think her mother could work because her "nerves is too bad." Tr. 45.

### 3. VE's Testimony

VE Cornetta Harrelson testified that Plaintiff's past relevant work ("PRW") was "as a housekeeping cleaner at the light level of exertion, SVP of 2. It is [DOT number] 323.687-014. Occasionally those weights would have been heavier." Tr. 46. The ALJ clarified that the housekeeping is normally performed as light and SVP would be unskilled. *Id.* Plaintiff's attorney had no questions for the VE. *Id.*

## II. Discussion

### A. The ALJ's Findings

In his May 8, 2012 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since February 4, 2010, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: mild degenerative disc disease of the lumbar spine and arthritis (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, I find that the claimant has
        the residual functional capacity to perform the full range of light work as
        defined in 20 CFR 404.1567(b) and 416.967(b).

6.      The claimant is capable of performing past relevant work as a
        housekeeper. This work does not require the performance of work related
        activities precluded by the claimant's residual functional capacity (20 CFR
        404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social
        Security Act, from February 4, 2010, through the date of this decision (20
        CFR 404.1520(f) and 416.920(f)).

Tr. 14-17.

   B.   Legal Framework

        1.   The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for

benefits, who are not of retirement age, who properly apply, and who are "under a disability,"

defined as:

   inability to engage in any substantial gainful activity by reason of any medically
   determinable physical or mental impairment which can be expected to result in
   death or which has lasted or can be expected to last for a continuous period of not
   less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations

promulgated under the Act have reduced the statutory definition of disability to a series of five

sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing

considerations and noting "need for efficiency" in considering disability claims).  An examiner

must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a

severe impairment; (3) whether that impairment meets or equals an impairment included in the

Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 2.  The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *See Vitek*, 428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that

decision must be affirmed "even should the court disagree with such decision."  *Blalock v.*
*Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### C.  Analysis

Plaintiff asserts that the ALJ erred "in rendering an unfavorable decision as to the
Claimant's Disability as there was not substantial evidence supporting or compelling his
conclusion" and that the Appeals Council "erred in denying Plaintiff's appeal of the [ALJ's]
Decision." Pl's Br. 1-2, ECF No. 11.

### 1.  Listing 1.04

Plaintiff appears to allege that the ALJ erred in not determining that Plaintiff's
impairments or combination of impairments met Listing 1.04 arguing "while the MRI did not
reveal significant evidence however other medical records revealed, scholiosis (sic), muscle
weakness, decreased range of cervical spine by 75%, osearthritis (sic) and degenerative disc."
Pl.'s Br. 4, ECF No. 11.  The Commissioner asserts the ALJ reasonably found that Plaintiff did
not have an impairment or combination of impairments that met or medically equaled a Listing.
Def.'s Br. 7, ECF No. 12.

"For a claimant to show that his impairment matches a listing, it must meet all of the
specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). It is not enough that the
claimant have the diagnosis of a listed impairment; the claimant must also have the findings
shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); *see Bowen v. Yuckert*, 482 U.S.
137, 146 and n.5 (1987) (noting the claimant has the burden of showing that his impairment is
presumptively disabling at step three of the sequential evaluation and that the Act requires him to
furnish medical evidence regarding his condition). The Commissioner compares the symptoms,
signs, and laboratory findings of the impairment, as shown in the medical evidence, with the

medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period . . . during which all of the criteria in the Listing of Impairments [were] met." *DeLorme v. Sullivan*, 924 F.2d 841, 847 (9th Cir. 1991) (finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

     Listing 1.04 provides, in pertinent part:

     1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

          A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

          B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

          C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04. In his decision, the ALJ determined that Plaintiff did not meet Listing 1.04 because "MRI examinations failed to reveal any significant herniations, stenosis or nerve root impingement." Tr. 15.

     Plaintiff does not explain how her impairments combined to meet each requirement of a listing. Accordingly, Plaintiff has not shown, as she must show for remand, that further evaluation by the ALJ would have resulted in his finding that her combination of impairments

met a listing. Plaintiff generally refers to "other medical records" that revealed scoliosis, muscle weakness, decreased range of cervical spine, osteoarthritis, and degenerative disc—none of which meet the requirements for Listing 1.04. *See* Pl.'s Br. 4. Plaintiff has not presented any evidence to show that she suffered from a nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis which resulted in pseudoclaudication as required by this listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Accordingly, the ALJ's finding that Plaintiff failed to meet or equal any of the Listings is supported by substantial evidence.

2.   Plaintiff's Ability to Return to PRW

Plaintiff's next argument seems to contend that the ALJ conducted a flawed RFC analysis by concluding that she could return to her PRW as a housekeeper. This argument takes into consideration the ALJ's credibility findings, his consideration of medical opinion evidence, and his consideration of the VE's testimony. Pl.'s Br. 6-8. The Commissioner asserts that substantial evidence supports the ALJ's RFC finding. Def.'s Br. 9.

In making his RFC determination the ALJ held: "After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." Tr. 15. The Regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ also determined Plaintiff was "capable of performing PRW as a housekeeper. This work does not require the performance of work related

activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965)." Tr. 17.

Under SSR 96–8p, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." The ALJ's decision shows that he complied with this SSR. The ALJ discussed the medical records and findings of the consulting physicians and objective testing, as well as Plaintiff's own testimony and the testimony of her daughter. The ALJ outlined the medical evidence with respect to Plaintiff's physical limitations, noting where the objective medical evidence did not support the degree of limitation claimed.

a. Medical Opinions

The ALJ noted that in June 2011, Plaintiff underwent a consultative examination with Dr. Marcus Schaefer who reported that Plaintiff had decreased range of motion in her cervical spine and full range of motion in her shoulders, elbows, wrists, and fingers. Tr. 16. The ALJ also noted Dr. Schaefer's conclusion that Plaintiff should be in the light category of work. *Id.* The ALJ also considered the RFC conclusions from state agency physicians Dr. Tom Brown and Dr. Smolka, noting that Dr. Brown concluded Plaintiff could perform work at the light exertional level while Dr. Smolka determined Plaintiff could work at the medium exertional level. While attributing significant weight to their opinions, the ALJ found Plaintiff's "impairments to be more limiting that did Dr. Smolka and have modified the residual functional capacity accordingly." *Id.*

Plaintiff argues that the "ALJ failed to mention and accorded no weight to Dr. Schaefer's summary conclusion that 'at 62 she is in a very difficult job market for the type of job she can do which are probably housekeeping and related activities of medium department of labor category

work and she should be in the light category of work.'" Plaintiff also contends that the ALJ erred by "giving greater weight to a non-treating physician's opinion than to a treating consultive (sic) physician." Pl.'s Br. 6. As the Commissioner notes, the ALJ acknowledged Dr. Schaefer's conclusion that Plaintiff should be in the light category of work, Tr. 16, and the ALJ made that determination in his RFC assessment, Tr. 15. The Commissioner argues that Dr. Schaefer's statement regarding Plaintiff's age and the job market was not a medical opinion, but a vocational opinion, which he was not qualified to make. Def.'s Br. 11. The Commissioner also argues that Dr. Schaefer's statement was "irrelevant as to whether [Plaintiff] could actually perform that job," and his statement that housekeeping required medium level work was belied by the VE's testimony that based on the DOT it required light exertion. *Id.* at 12. The Commissioner further contends that the opinions of the state agency doctors are supported by the medical evidence of record and therefore the ALJ could attribute them significant weight. *Id.*

"Although an ALJ is required by Social Security regulations to assign weight to all medical opinions, *see* 20 C.F.R. § 416.927(e)(2)(ii), an ALJ's failure to expressly state the weight given to a medical opinion may be harmless error when the opinion is consistent with the ALJ's RFC determination." *Davis v. Colvin*, No. 12–2244–CMC–BM, 2014 WL 172513, at *2 (D.S.C. Jan. 15, 2014) (citing *Morgan v. Barnhart*, 142 F. App'x 716, 722–23 (4th Cir. 2005) (holding that any error in failing to credit a medical opinion was harmless where the ALJ incorporated results of functional capacity exam, which was consistent with medical opinion, into plaintiff's RFC); *Rivera v. Colvin*, No. 5:11–CV569–FL, 2013 WL 2433515 (E.D.N.C. June 4, 2013) ("ALJ's failure to expressly state the weight given to a medical opinion may be harmless error, when the opinion is not relevant to the disability determination or when it is consistent with the ALJ's RFC determination.")).

Here the ALJ considered the statement made by Dr. Schaeffer, and his opinion that Plaintiff should be in the light category of work is consistent with the ALJ's RFC determination. Accordingly, the undersigned recommends a finding that the ALJ's failure to weigh Dr. Schaefer's opinion was harmless error. The undersigned further recommends a finding that the ALJ did not err in giving different weight to the different medical sources in making his conclusion. The decision reflects that the ALJ properly reviewed all of the evidence in determining Plaintiff's RFC. Additionally, the undersigned recommends finding that the ALJ properly weighed the opinions of the state agency doctors. "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i); *see Smith v. Schweiker*, 795 F.2d at 345-46 (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner). The ALJ gave significant weight to the state agency opinions that Plaintiff was not disabled finding the opinions were "well-supported by the weight of the evidence of record" although he found Plaintiff's impairments more limiting than the opinion of Dr. Smolka. Tr. 16. Plaintiff attempts to argue that Dr. Schaefer's opinion should be entitled to controlling weight under the treating physician rule. However, as the ALJ noted, Plaintiff was seen by Dr. Schaefer for a consultative examination—he was not her treating physician. Ultimately, it is the responsibility of the Commissioner, not a reviewing court, to review the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). A court must not, however, abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir.

1974). Based on the above, the undersigned finds the ALJ's treatment of the medical opinions is supported by substantial evidence and is not contrary to law.

b.  Plaintiff's Credibility

Plaintiff asserts that the ALJ "makes no mention of what inconsistencies he relies upon" in making his credibility determination and "all records support Plaintiff's claims of pain and impairment." Pl.'s Br. 7. The Commissioner argues the ALJ considered Plaintiff's subjective complaints and reasonably found they were not fully credible. Def.'s Br. 12.

SSR 96–7p requires that, prior to considering Plaintiff's subjective complaints the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess the claimant's credibility regarding the severity of her subjective complaints, including pain. *See* SSR 96–7p; *see also* 20 C.F.R. § 404.1529(b); *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996). The requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face. The ALJ may consider the claimant's credibility in light of her testimony and the record as a whole. If he rejects a claimant's testimony about a claimant's pain or physical condition, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir.1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the

adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p; *see*

*Mickles v. Shalala*, 29 F.3d 918, 927 (4th Cir. 1994) ("Although a claimant's allegations about

her pain may not be discredited solely because they are not substantiated by objective evidence

of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with

the available evidence, including objective evidence of the underlying impairment, and the extent

to which that impairment can reasonably be expected to cause the pain the claimant alleges she

suffers . . . .").

    Here, the undersigned finds the ALJ's credibility analysis is supported by substantial

evidence and was sufficiently specific. The ALJ noted the following:

> After careful consideration of the evidence, I find that the claimant's medically
> determinable impairments could reasonably be expected to cause the alleged
> symptoms; however, the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not fully credible to the
> extent they are inconsistent with the above residual functional capacity
> assessment.

Tr. 15. The ALJ considered Plaintiff's hearing testimony that she had difficulty using her hands

and does not use her right arm, she does not hold heavy objects in her right hand, her pain is

exacerbated by pushing a vacuum, and she is unable to sit straight secondary to pain. Tr. 15. The

ALJ then noted inconsistencies in that after Plaintiff's alleged onset date she accepted

unemployment benefits which implied she was not totally disabled; he noted medical opinion

evidence which found Plaintiff had normal range of motion of her elbows, wrists, and fingers,

and "hand grasp strength on the right of 60 pounds, 55 pounds, 60 pounds" and she could

perform light work; and x-rays that were unremarkable. Tr. 15-16.

    The undersigned finds the ALJ's credibility analysis is supported by substantial evidence

and was sufficiently specific. *See Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000) (noting

ALJ may discount a claimant's complaints if inconsistencies are apparent in the evidence as a

whole). The ALJ discussed the two-part test for evaluating pain and analyzed the entire case record. Tr. 15-16. The ALJ noted that although Plaintiff's "allegations of such significant limitations and pain were not fully consistent with the medical evidence of record" he still gave her the "benefit of the doubt" and further reduced her RFC. Tr. 17. However, due to "significant inconsistencies in the record as a whole" the ALJ could not find Plaintiff's allegation that she is "incapable of all work activity to be credible." *Id.*

### c.   VE Testimony

Plaintiff asserts there is no basis in the record to support the ALJ's contention that she was capable of performing PRW because the cited VE testimony did not exist. Pl.'s Br. 7.  The ALJ noted in his decision that the VE testified that an individual with the same age, education, work experience, and limitations as set forth in the RFC could perform Plaintiff's PRW. Tr. 17. As conceded by the Commissioner, the ALJ and VE did not exchange the reported colloquy. Def.'s Br. 17.  But, the Commissioner asserts that the testimony of a VE was not required at Step Four, and even absent VE testimony "Plaintiff still had the residual functional capacity for the full range of light work and past relevant work as a housekeeper, an unskilled job requiring light exertion." *Id.*  Accordingly, "any apparent misstatement does not affect the outcome." *Id.*

A claimant will be found "not disabled" when it is determined that the claimant retains the RFC perform his or her PRW either as he or she performed it in the past or as it is generally required by employers in the national economy. SSR 82–61, 1982 WL 31387 at *2. The claimant bears the burden of establishing that he or she is incapable of performing his or her PRW. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If a claimant can perform PRW either as she performed it or as it is generally performed in the

economy, the claimant is not disabled within the meaning of the Act. SSR 82–61. Social Security

Ruling 82–62 provides:

> In finding that an individual has the capacity to perform a past relevant job, the
> determination or decision must contain among the findings the following specific
> findings of fact:
>
>> 1. A finding of fact as to the individual's RFC.
>> 2. A finding of fact as to the physical and mental demands of the past
>> job/occupation.
>> 3. A finding of fact that the individual's RFC would permit a return to his
>> or her past job or occupation.

SSR 82–62, 1982 WL 31386, at *4. Here the ALJ found that Plaintiff was able to perform her

PRW as a housekeeper. Tr. 17. The ALJ fulfilled the first requirement of SSR 82–62 by finding

Plaintiff had the RFC "to perform the full range of light work" as defined in the regulations. Tr.

15. In support of his RFC finding the ALJ cited to the consultative examination performed by Dr.

Schaefer, x-rays of Plaintiff's right shoulder and lumbar spine, and to the opinions of state

agency medical consultants, Drs. Brown and Smolka. Tr. 16. As to the second requirement,

Plaintiff described the demands of her job as a housekeeper in her work history report, Tr. 167-

69, and in her hearing testimony, Tr. 31-32. The ALJ may rely on the general categories of job

information in the DOT to presumptively show how Plaintiff's PRW was customarily performed.

*DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983); *Thomas v. Astrue*, No. 0:08–2847–

PJG, 2010 WL 844756, at *7 (D.S.C. Mar. 3, 2010)). The ALJ noted the specific DOT category

and name of Plaintiff's PRW; he also noted Plaintiff's work history report. Tr. 17 (citing "DOT

#323.687-014 (housekeeper) and Exhibit 3E"). The ALJ determined that in "comparing the

claimant's residual functional capacity with the physical and mental demands of this work . . .

claimant is able to perform it as generally performed." *Id.* By relying on the DOT, the ALJ was

able to make an appropriate finding. Although the VE did not testify as the ALJ noted in his

decision, at the hearing the ALJ did ask the VE about Plaintiff's PRW and asked her to point out if it varied from the DOT. Tr. 46. The undersigned finds that the ALJ complied with the requirements of SSR 82–62 in determining that Plaintiff was able to perform her PRW.

The ALJ failed to question the VE as to whether there were any conflicts between the jobs as described by Plaintiff and the description in the DOT. A comparison of Plaintiff's work history report and the DOT's description of her PRW suggest some inconsistencies between the jobs as described by Plaintiff and the DOT's description of it as light work. However, because a claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy *or* as the claimant actually performed the work, the ALJ would have reached the same conclusion even if she had concluded that Plaintiff could not perform her PRW as actually performed. *See* SSR 82–62. Therefore, the undersigned recommends that the ALJ's error be deemed harmless. *See Mickles v. Shalala*, 29 F.3d at 921 (finding that where the ALJ conducted the proper analysis, cited substantial evidence to support his finding, and would have reached the same conclusion notwithstanding his initial error, the error was harmless). Accordingly, the ALJ's RFC analysis and determination that Plaintiff could perform her PRW is supported by substantial evidence.

### 3. Appeals Council

Finally Plaintiff argues that the Appeals Council erred in denying her appeal of the ALJ's decision based on new evidence. Pl.'s Br. 8-9. Plaintiff asserts that the new evidence, a November 2012 MRI, "directly supports what the ALJ required to deem the impairment severe" and if deemed severe "no other steps in the sequential process would be required and the Plaintiff would be entitled to benefits." *Id.* at 9. The Commissioner contends that the "final decision that

Plaintiff was not disabled remains supported by substantial evidence, even in light of additional evidence submitted to the Appeals Council and included in the record." Def.'s Br. 18.

"Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011) (quoting *Wilkins v. Sec'y, Dep't Health and Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991)). As noted by Plaintiff, the "newly presented medical record indicated mild disc bulges at C2-C7, Mild anterior flattening at C3/4 and mild exit narrowing at CT/TI." *Id.* The undersigned recommends a finding that this new evidence would not have changed the ALJ's determination. Plaintiff's argument that the new evidence supports what the ALJ required to deem her impairment severe is unavailing. In his decision the ALJ found that Plaintiff's mild degenerative disc disease was severe, but that "MRI examinations failed to reveal any significant herniations, stenosis or nerve root impingement." Tr. 14-15. The new MRI also fails to reveal any such evidence and specifically states "[n]o severe stenosis or neural impingement." Tr. 279. The new MRI record does not render the ALJ's decision unsupported by substantial evidence and there was no error on the part of the Appeals Council in denying Plaintiff's appeal. *See Smith v. Chater*, 99 F.3d 635, 638–39 (4th Cir. 1996) (affirming an ALJ's denial of benefits after reviewing new evidence presented to the Appeals Council because the court concluded that "substantial evidence support[ed] the ALJ's findings").

III. Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned cannot determine that the Commissioner's finding is unsupported by substantial evidence or contains legal error.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.


November 25, 2014                                          Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge


**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**